**BOWNE OF NEW YORK CITY, INC., Plaintiff,**

v.

**AmBASE CORPORATION, Defendant,**

**Chemical Bank, Additional Defendant on Counterclaims.**

No. 92 Civ. 0053 (RLC).

United States District Court, S.D. New York.

April 27, 1995.

260

Anderson Kill Olick & Oshinsky (Anthony Princi, Leonard A. Cohen, of counsel), New York City, for plaintiffs.

Friedman, Wang & Bleiberg (Peter N. Wang, Robert A. Scher, of counsel), New York City, for defendant AmBase Corp.

Kelley Drye & Warren (Paul F. Doyle, of counsel), New York City, for counterclaim defendant Chemical Bank.

Chemical Bank Legal Dept. (James L. Condren, of counsel), New York City, for counterclaim defendant Chemical Bank.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant AmBase Corporation ("AmBase") has filed an objection to the memorandum and order issued by Magistrate Judge Dolinger dated October 29, 1993 ("October order") on the grounds that defendant's position on the underlying discovery motions was "substantially justified" and that even if the imposition of costs was warranted, the amount of costs imposed was excessive. Plaintiff Bowne of New York City, Inc. ("Bowne") and counterclaim defendant Chemical Bank ("Chemical") have filed joint objections to the October order on the grounds that costs for conferences between attorneys should have been allowed; costs for time spent researching, drafting and editing the motions that was disallowed because it was recorded jointly with conference time should have been allowed; and Judge Dolinger made a mathematical error in calculating the fee award.

### I. Background

Bowne, a financial printer, commenced this action in 1992 seeking payment for a number of printing jobs that it had performed for AmBase, including the printing of a proxy statement in connection with AmBase's 1991 sale of The Home Insurance Company ("the Home"). AmBase counterclaimed against Bowne and against Chemical, which was the successor in interest to Manufacturers Hanover Trust, Bowne's former transfer agent, claiming that the proxy statement had been sent out late and that as a result the sale was delayed and AmBase lost a tax refund of more than $23 million.

In the course of discovery, Bowne and Chemical requested numerous documents regarding the sale of The Home. AmBase and its counsel refused to produce more than 1,500 documents or answer more than 100 deposition questions on the grounds of attorney-client privilege and work product protection. Bowne and Chemical then filed joint motions to compel production of documents (the "document motion"), to compel deposition testimony (the "testimony motion"), and to compel discovery on the grounds that AmBase had waived its attorney-client privilege and work product protection during a previous lawsuit (the "waiver motion"). After a round of reply and surreply papers, as well as oral argument on March 5, 1993, Judge Dolinger issued a memorandum and order on June 3, 1993 ("June order"), granting the major part of the three motions and ruling, pursuant to Rule 37(a)(4), F.R.Civ.P., that Bowne and Chemical could recover an unspecified portion of the expenses they had incurred in bringing the motions. No party filed objections to the order within the statutory ten-day limit.

Bowne and Chemical then applied for fees of $94,474.65 and $83,863.50 respectively. AmBase opposed the costs applications on the grounds that its opposition to the three discovery motions had been substantially justified and that the expenses sought were excessive and unreasonable. In his October order, Judge Dolinger found that AmBase's opposition to the motions was not substantially justified and granted costs and expenses to Bowne of $38,014.80 and to Chemical of $25,574.00. It is this order to which all three parties have filed objections.

### II. Oral Argument

■ AmBase requests oral argument on the issues contained in its objection. The parties' positions were extensively briefed in the papers submitted to Judge Dolinger regarding the three discovery motions and the imposition of costs, as well as in the objections to the October order filed with this court. The parties had an additional chance to refine their positions during oral argument before Judge Dolinger in March, 1993. Therefore, the court feels no need to hear oral argument and will decide this case on the submissions.

### III. Standard of Review

■ When a party makes a timely objection to a portion of a magistrate judge's

report and recommendation regarding "a pretrial matter not dispositive of a claim or defense of a party," the district judge must set aside those portions of the order that are "clearly erroneous or contrary to law." Rule 72(a), F.R.Civ.P. The imposition of monetary sanctions under Rule 37 constitutes such a nondispositive order. *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.), *cert. denied sub nom. Greenspan, Jaffe & Rosenblatt v. Sara Lee Corp.,* 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). A finding is not clearly erroneous when "there are two permissible views of the evidence," *Banker v. Nighswander, Martin & Mitchell,* 37 F.3d 866, 870 (2d Cir.1994), and the reviewing court should affirm if "any reasonable view of the record" supports the factfinder's conclusions. *Marine Midland Bank, N.A. v. United States,* 11 F.3d 1119, 1123 (2d Cir.1993).

## IV. Preclusion under Rule 72(a), F.R.Civ.P.

■ Bowne and Chemical argue that because Judge Dolinger found in his June order that AmBase's positions in opposing the three discovery motions "have not, in any meaningful sense, been justified," (June order at 71), and because AmBase did not appeal that order, Rule 72(a), F.R.Civ.P., precludes AmBase from arguing here that its positions on the three discovery motions were substantially justified and that no expenses should be awarded. Under Rule 72(a), parties who do not object to magistrates' orders within ten days after being served with a copy of the order "may not thereafter assign as error a defect in the magistrate's order to which objection was not timely made." *Id.* Therefore, if Judge Dolinger properly reached the issue of substantial justification in the June order, the parties are precluded from raising that issue again.

Under Rule 37(a)(4), however, judges may impose discovery sanctions in the form of expenses only after "affording an opportunity to be heard." Rule 37(a)(4), F.R.Civ.P. The issue here, therefore, is whether the June order was issued after such an opportunity. Judge Dolinger evidently believed that prior to issuing the June order AmBase had not been adequately heard on the issue of substantial justification, because in the October order he noted that "the decision of AmBase not to appeal the June 3 order pursuant to F.R.Civ.P. 72(a) does not preclude it from arguing on this application that its positions on the three motions were 'substantially justified.'" (October order at 12, n. 3.) Bowne does not contend that AmBase was given a proper hearing on this issue prior to the June order—in fact, in the papers Bowne filed in opposition to AmBase's objection to the October order, it completely ignored the fact that Judge Dolinger had ruled that AmBase was entitled to raise the substantial justification issue. Since Bowne did not properly object to Judge Dolinger's ruling within the required ten-day period, and the court does not have evidence before it showing that the ruling was clearly erroneous or contrary to law, the ruling will stand. The court will hear AmBase's objection that its position regarding the discovery motions was substantially justified. *See Perez–Rubio v. Wyckoff,* 718 F.Supp. 217, 227 (S.D.N.Y.1989) (Ward, J.) (where no timely objection has been made to portion of magistrate's report and recommendation, the district judge must only determine that there was "no clear error on the face of the record").

## V. Substantial Justification

■ Under Rule 37(a), F.R.Civ.P., when a party moves to compel disclosure or discovery and the court finds that the opposing party's position in opposing the motion was not "substantially justified," the judge must impose costs on the opposing party or on his attorney. *See* Rule 37(a), F.R.Civ.P. Advisory Committee Notes to 1970 Amendment (costs award is mandatory unless court finds that non-moving party acted justifiably). This standard holds the opposing party to an objective test of reasonableness and does not require that he acted in good faith. *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

AmBase does not bother to argue that its opposition to the testimony and document motions was justified but rather relies on its conclusion that the waiver issue was "the linchpin to Magistrate Judge Dolinger's decision on the discovery issues." (AmBase Mem. in Opp'n to Bowne & Chemical Joint Obj'n to Mag. J.'s Mem. & Order & in Reply to Opp'n to AmBase Obj'n to Mag. J.'s Mem. & Order at 7.) Bowne and Chemical contest this characterization, arguing that the rulings on the testimony and document motions were supported by numerous independent bases unrelated to the waiver issues. (Bowne & Chemical Joint Mem. in Opp'n to AmBase Obj'ns to Mag. J. Dolinger's Mem. & Order at 13–15 n. 10.) Judge Dolinger's finding that AmBase's positions on all three motions were not substantially justified, and his ruling that AmBase must pay Bowne and Chemical's expenses in preparing all three motions, specifically applied to all three motions. It is true that because Judge Dolinger found that AmBase had largely waived its privilege claims he did not need to rule on each individual document or deposition question addressed by the testimony and document motions. However, it would be perverse to hold that the fact that AmBase lost on the waiver motion meant that its opposition to the other motions was justified or that Bowne and Chemical must therefore cover the costs of bringing the motions to compel. Therefore, AmBase will only be relieved of its obligation to pay expenses related to a specific motion if it can show that its position on that motion was substantially justified.

### A. Testimony and Document Motions

■ AmBase does not argue that its positions on the testimony and document motions were justified, and the court's review of AmBase's papers does not indicate that Judge Dolinger's conclusion that AmBase's opposition to those motions was not substantially justified was clearly erroneous or contrary to law. On the contrary, it is clear that AmBase failed to marshall the evidence necessary to support its claims of privilege. First, after Bowne and Chemical brought their testimony and document motions AmBase conceded that 24 documents had been improperly withheld and that almost forty percent of

the contested deposition questions should have been answered.

Second, there is simply no evidence in the record indicating that Judge Dolinger's conclusion that AmBase failed to present any evidence in the form of affidavits or specific deposition testimony to support its claims of privilege was clearly erroneous. (October order at 11; June order at 10.) As Judge Dolinger and Bowne and Chemical have observed, AmBase generally supported its claims of privilege with sweeping generalizations about categories of documents in lieu of providing evidence about the characteristics of each document.

■ AmBase has claimed that its failure to support its privilege arguments should be overlooked because the burden lay with Bowne and Chemical to show that the documents were not privileged. This contention is directly contrary to the long-standing law in this district and in New York, according to which parties claiming the protection of a privilege must establish all the elements of that privilege. See von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 146 (2d Cir.) (burden is on party claiming protection of attorney-client), cert. denied, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); In re Horowitz, 482 F.2d 72, 81 (2d Cir.1973) (burden is on party claiming protection of any privilege), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); People v. Mitchell, 58 N.Y.2d 368, 461 N.Y.S.2d 267, 269–70, 448 N.E.2d 121, 123 (1983). Not surprisingly, AmBase never carried through on its promise to provide cases to support its contention. (See June order at 13 n. 2.) Therefore, Judge Dolinger's decision that AmBase's opposition to these two motions was not substantially justified was neither contrary to law nor clearly erroneous, and the ruling awarding Bowne and Chemical the costs of defending the testimony and document motions must stand.

### B. Waiver Motion

■ Before evaluating AmBase's opposition to the waiver motion, it is necessary to outline the nature of the attorney-client privilege and the work product protection.

Where, as here, no federal claims or defenses are asserted, federal courts sitting in diversity look to state law regarding attorney-client privilege. Rule 501, F.R.Evid.; *see also Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir.1975). Judge Dolinger found that the attorney-client relationship between AmBase and its counsel was based in New York, and as the parties have not contested this conclusion the court will apply New York substantive law. *See Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 521 (S.D.N.Y. 1992) (Dolinger, Mag. J.). The elements of the attorney-client privilege under New York law are the existence of an attorney-client relationship, a communication made within the context of that relationship for the purpose of obtaining legal advice, and the intended and actual confidentiality of that communication. *People v. Osorio*, 75 N.Y.2d 80, 550 N.Y.S.2d 612, 614, 549 N.E.2d 1183, 1185 (1989). Unlike the attorney-client privilege, the work product protection in diversity cases is governed by federal law, *Fine v. Facet Aerospace Prods. Co.*, 133 F.R.D. 439, 444–45 (S.D.N.Y.1990) (Francis, Mag. J.), specifically, Rule 26(b)(3), F.R.Civ.P., which allows discovery of materials

> prepared in anticipation of litigation or for trial by or for another party or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

 The attorney-client privilege is waived if the communication is made in the presence of or later divulged to third parties unless the third parties are the attorney's employees or agents. *Osorio*, 75 N.Y.2d 80, 550 N.Y.S.2d at 614–15, 549 N.E.2d at 1185–86. The work-product protection is waived

where the material is disclosed to an adversary. *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir.1991). It is undisputed that in a series of earlier, unrelated proceedings, which the court will collectively call "*Robitaille*," representatives of AmBase gave deposition testimony regarding some of the subject matter that AmBase now claims is privileged. Bowne and Chemical asserted in their waiver motion that by allowing this testimony AmBase waived any attorney-client privilege and work-product protection that it might otherwise have had regarding these subjects.

 AmBase argued that although in the *Robitaille* proceedings it allowed disclosure of much of the matter that it now claims is privileged, the disclosure occurred pursuant to stipulations that any waivers of privilege were limited to the *Robitaille* proceeding and consequently no waiver occurred in the instant proceedings. AmBase's argument rests on the availability of a "limited waiver" option in which parties can disclose otherwise privileged information to particular third parties without waiving the privilege in other contexts.[1] The Eighth Circuit developed the limited waiver doctrine in the context of disclosures to the SEC and other government agencies, believing that it was necessary to support the interests of government regulation. *See, e.g., Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir.1977) (en banc). In 1981, Judge Conner of this district adopted the limited waiver approach in *Teachers Ins. & Annuity Ass'n of Am. v. Shamrock Broadcasting Co.*, 521 F.Supp. 638, 646 (S.D.N.Y.1981) ("*Teachers*"), in which a party was found to have preserved its attorney-client privilege with respect to documents that had previously been turned over to the SEC. Although *Teachers* has never been explicitly overruled, in *In re John*

---

1. The availability of limited waiver of attorney-client privilege in this case is controlled by New York law, but there does not seem to be any New York law on point. Judge Dolinger, without objection from the parties, looked to federal precedent. I will do the same. Since the work-product doctrine is governed by federal law, there is no question that federal precedent governs on the availability of limited waiver of work product protection.

Although there are slightly different standards for waiving attorney-client privilege and work product protection, the disclosures here were unquestionably made to adversaries and, therefore, waiver of the work product protection is brought into question. The doctrine of limited waiver is substantially the same as regards both the attorney-client privilege and the work product protection. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir.1993).

*Doe Corporation* the Second Circuit soundly rejected the limited waiver doctrine, noting that the attorney-client privilege "is an exception to the critically important duty of citizens to disclose relevant evidence in legal proceedings [and that it] does not shield communications which serve purposes other than those which led to judicial recognition of the privilege." *In re John Doe Corp.*, 675 F.2d 482, 489 (2d Cir.1982); *see also Westinghouse Elec. Corp.*, 951 F.2d at 1425; *Permian Corp. v. United States*, 665 F.2d 1214, 1220–22 (D.C.Cir.1981). In that case, a grand jury sought documents that "the John Doe Corporation" ("Doe Corp.") claimed were privileged. Doe Corp. had previously shown the disputed documents to an accounting firm and to a lawyer representing an underwriter. The Second Circuit found that attorney-client privilege was waived by voluntary disclosure to a non-governmental entity, leaving for another day the question of whether the privilege would have been waived had the previous disclosure been to a government agency pursuant to an agreement "purporting to protect the privilege so far as other agencies are concerned."[2] *In re John Doe Corp.*, 675 F.2d at 489.

 Although the "greatest operative principle of Rule 37(a)(4) is that the loser pays," *Brown v. Iowa*, 152 F.R.D. 168, 173 (S.D.Iowa 1993) (quoting 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2288 (1970)), courts may not award costs where the losing party's opposition to the motion was based on the existence of a genuine dispute because "[i]n such cases, the losing party is substantially justified in carrying the matter to court." Rule 37(a)(4), F.R.Civ.P. Advisory Committee Notes to 1970 Amendment. When a dispute involves differing interpretations of the governing law, opposition is substantially justified unless it involves an unreasonable, frivolous or completely unsupportable reading of the law. *See Nochowitz v. Ernst & Young*, No. 92C5468, 1993 WL 112535, at *1 n. 1, 1993 U.S.Dist. Lexis 4444, at *3 n. 1 (N.D.Ill. 1993) (although supporting authority was unpersuasive and irrelevant, motion did not "fl[y] in the face of established law"); *Fagan v. District of Columbia*, 136 F.R.D. 5, 8 (D.D.C.1991) (arguments were "not entirely unreasonable"); *Harlem River Consumers Coop., Inc. v. Associated Grocers of Harlem, Inc.*, 54 F.R.D. 551, 554 (S.D.N.Y.1972) (MacMahon, J.) (opposition was "not frivolous"). Such a lenient standard is necessary given the fact that attorneys must advocate for their clients, *Nochowitz*, 1993 WL 112535, at *1 n. 1, 1993 U.S.Dist. Lexis 4444, at *3 n. 1; *see also Wood v. Breier*, 66 F.R.D. 8, 14 (E.D.Wis.1975) (no expenses awarded where interests asserted by losing party were important), and they must be allowed to address areas of the law that have not been fully elucidated by the courts. *Harlem River Consumers Coop., Inc.*, 54 F.R.D. at 554 (issue involved was largely unprecedented). Courts must be careful not to chill the imaginative use of advocacy in pursuit of changing the law. *See, e.g., Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985).

 In its memoranda of law in opposition to the waiver motion, AmBase completely ignored the fact that the Second Circuit and other circuits had rejected the limited waiver doctrine for cases in which the disclosure was not made to a governmental agency, failing to acknowledge the existence of *In re John Doe* at all despite the prominent place that case played in the papers filed by Bowne and Chemical.[3] (*See* AmBase Mem.

---

2. As AmBase notes, it was not until November 1993, after Magistrate Judge Dolinger had issued his October opinion, that the Second Circuit settled the question of whether prior disclosure to a government agency pursuant to a government investigation waives the privilege. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir.1993).

3. AmBase also attempts to show that the June opinion demonstrates that the law of limited waiver is less settled than it actually is. First, AmBase disingenuously argues that Magistrate

Judge Dolinger has "acknowledged ... that there was an issue regarding the status of *Teachers Insurance*, concluding that '*even if still valid,* the reasoning of *Teachers Insurance* would not apply here.'" (AmBase Obj'n to Mag.J.'s Mem. & Order at 14–15 (quoting June Order at 36).) On the contrary, Magistrate Judge Dolinger found that *Teachers* had been effectively overruled, (June Order at 36), and the language quoted merely introduces an argument in the alternative. Second, AmBase implies that it took Magistrate Judge Dolinger seventy-four pages to con-

in Opp'n to Motions to Compel Discovery at 51–59; *see also* AmBase Surreply at 2.) AmBase cannot now claim that there was a genuine dispute regarding the availability of limited waiver when it failed to even engage in such a dispute before the magistrate.

The court is confident that its endorsement of Judge Dolinger's finding that AmBase's opposition to the waiver motion lacked substantial justification will not have a chilling effect on legal advocacy. AmBase has not propounded any arguments encouraging the court to make new law; rather, it has used "[t]he ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist." *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1081 (7th Cir.1987) (quoting *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir.1987)). This is not to say that AmBase could not have made a perfectly valid argument establishing that the law was unsettled in this area or that it should be changed—the point here is that AmBase did not do so. *See International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir.) (in Rule 11 context, the question is whether attorney conformed with the law or challenged it at the time he signed the complaint, not whether he could now furnish an argument for overlooking the law), *cert. denied sub nom. Golub v. Hydra Offshore, Inc.*, 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *Szabo Food Serv., Inc.*, 823 F.2d at 1082 (in Rule 11 context, "[t]he only way to find out whether a complaint is an effort to change the law is to examine with care the arguments counsel later adduce"). Given AmBase's selective and deceptive citation of precedent, the court cannot find clear error in Judge Dolinger's conclusion that AmBase's arguments on this point were not substantially justified.

▆▆▆ Judge Dolinger also found that AmBase's reliance on *Teachers* was unjustified because AmBase never established the predicate for invocation of the limited waiver doctrine—that disclosure was made pursuant to a "stipulation or other express reservation of the producing party's claim of privilege as to the material disclosed." *See Teachers*, 521 F.Supp. at 646. He found that

> [i]n three of the *Robitaille* depositions, counsel for AmBase required an agreement solely that the disclosure of privileged information at that deposition would not be deemed by his adversaries to be a waiver as to any other materials, but he did not seek expressly to limit the waiver to that lawsuit. Moreover, in the remainder of the depositions, counsel did not make any reservations of privilege.

(June order at 37.) AmBase does not argue in its objection to the October order that these findings were clearly erroneous, and a review of AmBase's opposition to the waiver motion does not reveal any grounds for overturning Judge Dolinger's findings. AmBase rested its opposition to the waiver motion on an affidavit by Paul M. Dodyk, its trial counsel in *Robitaille*, stating that the stipulation in that case was intended to apply to all subsequent actions, but that statement of intent cannot overcome the lack of express language to that effect in the stipulation.

## VI. Amount of Expenses

▆▆▆ A party which is entitled to attorneys' fees under Rule 37(a), F.R.Civ.P., may recover "the reasonable expenses incurred in making the motion, including attorney's fees." The Second Circuit determines the amount of attorney's fee awards according to the "lodestar" formula, in which the number of hours spent by the attorneys is multiplied by "the hourly rate normally charged for similar work by attorneys of like skill in the area." *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir.1977). The party seeking reimbursement bears the burden of proving the hours spent and the prevailing rates charged. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir.1983). The lodestar figure can then be increased or reduced depending on subjective factors such as the level of complexity of the issues involved, the skill of the attorneys involved, overstaffing

clude that *Teachers* was no longer good law, (AmBase Obj'n to Mag. J.'s Mem. & Order at 16), although in fact the portion of that opinion discussing the weight of *Teachers* consisted of one paragraph.

and inflated hours. *See Grinnell Corp.*, 560 F.2d at 1098; *Seigal v. Merrick*, 619 F.2d 160, 164 n. 9 (2d Cir.1980), although the party seeking the departure bears the burden of justifying it. *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir.1989). This method is used to compute Rule 37(a) sanctions. *Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78, 83 (S.D.N.Y.1994) (Sweet, J.).

▉ The calculation of attorneys' fees is, admittedly, an inexact science. Especially where the fee requests are voluminous, courts need not "become enmeshed in a meticulous analysis of every detailed facet of the professional representation." *Seigal*, 619 F.2d at 164 n. 8 (quoting *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976)); *see also New York State Ass'n for Retarded Children, Inc.*, 711 F.2d at 1146. Fees may be awarded even where it is not clear exactly how much time was spent on reimbursable matters, *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1342 (2d Cir.1994), and the Second Circuit has upheld a fee award where the district court failed to exclude time that it should have but did reduce the lodestar amount. *United States Football League*, 887 F.2d at 414. It is thus less important that judges attain exactitude (which may be impossible) than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent and rates charged in a given case. *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir.1992).

Here, Bowne claimed that its attorneys and paralegals, who billed at hourly rates ranging from $80 to $250, spent 610.60 billable hours on the motions, incurring a total of $99,447.00 in fees. From this amount, Bowne excluded time that its attorneys would have spent even if it had not brought the motions, and it acknowledged that its

recovery should be reduced by five percent because its motions were not entirely successful, bringing the amount sought to $94,474.65.[4] Chemical claimed that its attorneys, who billed at hourly rates ranging from $130 to $310 during the relevant period, spent 387.7 billable hours on the motions, incurring a total of $83,863.50.

To calculate the number of hours that Bowne and Chemical's attorneys spent preparing the motions, Judge Dolinger included "time spent specifically on the three motions, including research, drafting, and editing the motions" and excluded "time spent on tasks that would have had to have been undertaken even if the motions had not been filed." (October order at 15.) He found that Bowne and Chemical had spent an excessive amount of time on the motions, and he consequently excluded all time spent in both intra- and inter-firm conferences. (October order at 15–16.) He also excluded time spent researching and drafting the motions when the timesheets submitted by Bowne and Chemical lumped that time together with time spent in conferences.[5] He found that Bowne and Chemical's attorneys billed their time at reasonable rates,[6] and he arrived at lodestar figures of $45,000.00 for Bowne and $26,000.00 for Chemical.[7] To account for the fact that Bowne and Chemical were unsuccessful on some aspects of their motions, the lodestar amounts were reduced by twenty percent, leaving Bowne with a fee award of $36,000.00 and Chemical with an award of $20,800.00.

### A. Conferences

▉ Bowne and Chemical argue that the intra-firm conferences were necessary because many tasks were delegated to junior attorneys in order to save money. It is true that attorneys seeking fees are expected to use junior attorneys where possible in order to save money, and several courts in this

---

4. Both Bowne and Chemical sought and were awarded reimbursement for costs. AmBase does not object to the Magistrate Judge's award of costs.

5. He also excluded eight hours that Chemical claimed it spent filing documents on March 19, 1993.

6. The reasonableness of those rates is not before the court at this time.

7. The October order does not list the specific fees included and excluded; nor does it state the total number of hours allowed.

district have reduced lodestar amounts where firms have failed to do so. *Mautner v. Hirsch*, 831 F.Supp. 1058, 1076 (S.D.N.Y. 1993) (Conner, J.) (citing cases), *aff'd in part, rev'd in part on other grounds*, 32 F.3d 37 (2d Cir.1994). Several courts have also reimbursed attorneys for intra-firm meetings, recognizing that "[s]uch time was well spent if it was the least expensive method of facilitating necessary communications between attorneys." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1296, 1350 (E.D.N.Y. 1985), *aff'd in part, rev'd in part on other grounds*, 818 F.2d 226 (2d Cir.1987); *see also Oxford Venture Fund Ltd. Partnership v. CIT Group/Equip. Financing, Inc.*, No. 89 Civ. 1836, 1990 WL 176102, at * 3 (S.D.N.Y. Nov. 5, 1990) (Francis, Mag. J.) (ordering compensation for time spent in intra-firm conferences because "[i]t is certainly desirable to delegate tasks to a number of attorneys within a firm"). Therefore, Judge Dolinger's decision not to reimburse Bowne and Chemical's attorneys for any intra-firm meeting time is contrary to law. *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. at 1350 (reimbursing attorneys for intra-firm meetings because "[s]uch time was well spent if it was the least expensive method of facilitating necessary communications between attorneys").

Bowne and Chemical also assert that their inter-firm conferences were necessary because Bowne and Chemical filed joint motions to promote efficiency. Certainly, courts have reimbursed attorneys for the steps they have taken to hasten the speed of and reduce the resources spent on litigation. For example, in *Grant v. Martinez*, 973 F.2d 96 (2d Cir.1992), *cert. denied sub nom. Bethlehem Steel Corp. v. Grant*, — U.S. —, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993), the court reimbursed counsel in a class action lawsuit for time spent defending a settlement agreement to class members, recognizing that "[t]he alternative to counsel's effective advocacy would have been further settlement negotiations or trial, either of which would

likely have required considerable resources." *Grant*, 973 F.2d at 100 (quoting Report and Recommendation of Mag. J. Bernikow, June 18, 1991). Courts generally grant attorneys' fees for inter-firm conferences in class action lawsuits, which require considerable coordination of the efforts of the many attorneys involved. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. at 1320. Since Bowne and Chemical saved themselves, as well as the court and AmBase's counsel, a considerable amount of effort by filing joint motions, Judge Dolinger's decision not to reimburse Bowne and Chemical's attorneys for any inter-firm meeting time constitutes reversible error.

However, the court agrees with Judge Dolinger's conclusion that both firms spent an excessive amount of attorney hours in both kinds of conferences, although it is not possible to calculate exactly how much time was spent in conference because in the time records conferences are often recorded together with research and drafting. For example, on December 10, 1992 six attorneys attended a conference that lasted almost two hours and twenty minutes and on January 7, 1993 seven attorneys attended a conference that lasted almost four hours.[8] Therefore, Bowne and Chemical will be reimbursed for only half of the time that their attorneys spent in conferences. *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. at 1350 (reimbursing only one-half of time spent in intra-firm conferences); *see also Oxford Venture Fund Ltd.*, 1990 WL 176102, at * 3 (reducing entire award by one-third, in part because of excessive time spent in intra-firm conferences). In order to allow the court to calculate the allowable time spent in conferences, Bowne and Chemical must resubmit their time sheets with the time spent in conferences segregated from all other time. This will also permit the court to reimburse them for the time spent researching and drafting motions for which they were not reimbursed in the October order because that time was

---

**8.** One of these attorneys was in-house counsel for Chemical, for whom Chemical does not seek attorneys' fees. Additionally, Bowne and Chemical do not always seek reimbursement for the time spent by all attorneys who participated in conferences, although there does not seem to be any consistency in this regard.

lumped in with conference time.[9] The court need not reach the question of whether the Judge Dolinger made a computational error in setting a lodestar figure of $45,000 for Bowne, because the computations will have to be redone anyway.

■ Counsel are cautioned to rely upon contemporaneous time records in segregating out the time spent in conferences. *New York State Ass'n for Retarded Children, Inc.*, 711 F.2d at 1147. If contemporaneous records listing conference time separately from research, drafting and editing time do not exist, the award may be reduced to account for the inaccuracies inherent in reconstructed records. *See Monaghan*, 154 F.R.D. at 83–84.

### B. Amount of Fees

Judge Dolinger found that the almost 1,000 hours spent on the motions was "an astounding amount of work given the nature of the issues and the work-product proffered to the court," and that "the amount of time claimed as expenses of the motions bears no reasonable relation to what in fact was briefed on these motions." (October order at 13–14.) This conclusion is not clearly erroneous. Judge Dolinger was dismayed by the amount of time claimed because the testimony and document motions "had significant areas of overlap since AmBase was claiming essentially the same privileges for essentially the same subject matters on both motions" and the legal issues involved in the motions were "fairly straightforward." (October order at 13.) He noted that Bowne and Chemical did not address each of the many contested documents and deposition questions individually, although he acknowledged that there were numerous legal issues involved in the briefs, some of which were "fairly lengthy." *Id.* He found that the hours inflation was caused by the fact that Bowne and Chemical sought reimbursement for work performed as much as three months prior to the filing of the motions and by their practice of staffing the cases heavily.

■ Since the court has removed the mechanism by which Judge Dolinger attempted to correct for hours inflation—disallowance of reimbursement for time spent in conferences and for time otherwise reimbursable but lumped together with time spent in conferences—it must reduce the lodestar figure further. Weighing the great number of documents and disputed deposition questions involved against the generous amount of time spent on the motions and reply papers, the court finds a reduction of ten percent adequate to account for fat stemming from excessive research and excessive time spent drafting and revising the motions. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir.1987); *New York State Ass'n for Retarded Children, Inc.*, 711 F.2d at 1146; *Oxford Venture Fund Ltd. Partnership*, 1990 WL 176102, at * 3 (reducing entire award by one-third because attorneys sought reimbursement for excessive amount of time).

■ The court rejects AmBase's contention, however, that the fee award must be reduced to an amount similar to other fee awards granted in this district in the past decade. "[A]ttorney's fees are dependent on the unique facts of each case," *Clarke*, 960 F.2d at 1153, and this case involved an extraordinary number of withheld documents and unanswered deposition questions, as well as a prior waiver of the privileges claimed. Furthermore, the parties are two large companies that hired prestigious, experienced, and consequently expensive lawyers. AmBase has never objected to the billing rates of these firms, which contributed considerably to the total amount charged.

### VII. Conclusion

Although AmBase is not precluded from arguing that its positions on the three motions was substantially justified, the court declines to disturb Judge Dolinger's finding that AmBase's position in opposing the motions lacked substantial justification. Find-

9. Magistrate Judge Dolinger's decision to disallow the lumped-together time seems to have been based on logistical considerations. Since those considerations will disappear when the conference time is segregated, the court has no need to determine whether the decision to disallow lumped-together time was correct.

ing that Judge Dolinger's failure to reimburse Bowne and Chemical's attorneys for the time spent in inter-firm and intra-firm conferences was contrary to law, the court orders AmBase to reimburse Bowne and Chemical at a rate of fifty percent for the time spent in conferences related to the researching, drafting and editing of the three motions. Bowne and Chemical shall resubmit their time records, segregating out the time spent in conferences from time spent researching, drafting and editing the motions. The matter is remanded to Judge Dolinger for a determination of which conference time should be reimbursed at a rate of fifty percent, as well as which of the drafting, research and editing time that was previously lumped together with the conference time should be reimbursed. After Judge Dolinger has computed the lodestar figure according to the guidelines set forth in his October order, as modified by this opinion, he shall reduce the lodestar figure by ten percent (in addition to the twenty percent that he has already ordered due to the fact that Bowne and Chemical did not prevail on all matters).

**IT IS SO ORDERED.**