**UNDERDOG TRUCKING, L.L.C. and Reggie Anders, Plaintiffs,**

v.

**VERIZON SERVICES CORPORATION, et al., Defendants.**

No. 09 Civ. 8918(DLC)(JLC).

United States District Court, S.D. New York.

March 7, 2011.

Lishomwa Damian Henry, Lishomwa Henry, Atty–at–Law, Philadelphia, PA, Eduardo Javier Diaz, The Law Offices of Eduardo Diaz, New York, NY, for Plaintiffs.

Raymond G. McGuire, Kristina Cunard Hammond, Kauff McGuire & Margolis LLP, Nathan Thomas Williams, Kennedy Lillis Schmidt & English, New York, NY, for Defendants.

## MEMORANDUM & ORDER

JAMES L. COTT, United States Magistrate Judge.

Defendants Verizon Services Corp. ("VSC") and Verizon Communications Inc. (together, "Defendants") seek costs, including attorney's fees, in connection with the filing of a motion to compel, pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure. After an eight-month pursuit by Defendants to obtain tax records and other financial documents evidencing economic damages, plaintiffs Reggie Anders ("Anders") and Underdog Trucking, LLC ("Underdog") (together, "Plaintiffs") produced the documents three weeks after Defendants moved to compel production. For the reasons stated herein, Defendants' application is GRANTED.

## I.  *PROCEDURAL BACKGROUND*
### A.  Defendants' Attempt to Obtain Discovery

Plaintiffs commenced this action against Defendants in 2009, asserting claims of race discrimination and breach of contract. Underdog, a company owned by Anders, provided trucking services to Cellco Partnership d/b/a Verizon Wireless from 2006 to 2009, pursuant to a contract between Underdog and VSC. Amended Petition for Damages, filed April 23, 2010 ("Pet.") ¶ 8. Plaintiffs allege significant economic damages, including annual revenue losses of $1,000,000, damage to Plaintiffs' credit rating, and loss of business opportunity. *Id.* ¶¶ 99, 102.

On April 2, 2010, Defendants served Plaintiffs with their first set of interrogatories and document requests. Declaration of Kristina C. Hammond, dated December 3, 2010 ("Hammond Decl.") Exs. 1–2. The document requests sought discovery concerning Plaintiffs' economic damages, including the following:

34. All documents related to the alleged damage to Plaintiffs' credit rating . . .

36. All documents concerning your contention that Plaintiffs purchased equipment at Verizon's request . . .

42. All documents pertaining to your claim for monetary damages or other relief in this action, including but not limited to all documents that would tend to establish the amount of damages, if any, you claim you suffered as a result of anything alleged in your Complaint and the amount of your claim for attorney's fees.

45. All documents that reflect income, salaries, benefits, or other compensation of any kind or nature paid to or received by Anders by any source since April 3, 2007, including but not limited to copies of all federal, Arizona, Louisiana, and other state or local income tax returns (including all W–2 and 1099 forms and other documents and schedules attached hereto); . . . records concerning income or other compensation Anders received from any self-employment, business, partnership, sole proprietorship, or other entity . . .

Hammond Decl. Ex. 1. Although the Federal Rules of Civil Procedure required Plaintiffs *to respond within 30 days,* Defendants agreed to a 16–day extension of time. *Id.* Ex. 3; *see* Fed.R.Civ.P. 33(b)(2)(A), 34(b)(2)(A). By May 24, however, Defendants had yet to receive responses to their discovery requests, and defense counsel Kristina Hammond ("Hammond") advised Plaintiffs' counsel Eduardo Diaz ("Diaz") that Defendants would not go forward with depositions in the absence of a document production from Plaintiffs. Hammond Decl. Ex. 3.

In an e-mail to Hammond dated June 4, 2010, Diaz stated that he would "begin sending . . . a large part of what [he had] received from [his] client." *Id.* Ex. 4. Between June 4 and June 14, Plaintiffs produced three documents in response to the 53 document requests propounded by Defendants. This initial document production consisted of a two-

page e-mail exchange between Underdog and Verizon Wireless employees, documents from the underlying E.E.O.C. proceeding, and invoices issued by Underdog to Verizon Wireless between September 2006 and May 2009. *Id.* ¶ 6. During a telephone call on June 25, Diaz assured Hammond that a supplemental production would be forthcoming. *Id.* ¶ 7 & Ex. 5 at 1.

By July 8, Defendants had received no additional documents from Plaintiffs. In a letter dated the same day, Hammond reminded Diaz that depositions were imminent, and warned that if "responsive documents [were not received] by July 21, 2010, along with a representation that no other responsive documents exist, [Defendants would] be forced to [ ] file a Motion to Compel." *Id.* Ex. 5. On July 30, Plaintiffs supplemented their production with incomplete copies of Anders's personal and business tax returns for 2008, and Articles of Incorporation for Underdog. *Id.* ¶¶ 10–11 & Exs. 6–7.

In a letter dated September 7, 2010, Defendants outlined numerous deficiencies in Plaintiffs' discovery responses, and repeated their request for tax returns and related financial documents. *Id.* Ex. 8. Despite the limited nature of Plaintiffs' document production, Defendants moved forward with the Anders deposition on September 9 and 10. *Id.* ¶ 14. During his deposition, Anders confirmed the existence of the financial records requested in Defendants' April 2 discovery requests, including documents reflecting equipment purchases, federal and state tax returns filed by Anders, and 1099 forms issued by Underdog. *Id.* Ex. 16 (Deposition of Reggie Anders, dated Sept. 9–10, 2010 ("Anders Dep."), at 21:18–22:4; 189:24–190:3 (equipment purchase), 40:13–15 (tax returns for 2007), and 273:13–17 (1099's issued by Underdog during previous three years)). Anders also testified that he filed tax returns for Underdog in 2007, the year it entered into the contract with VSC. *Id.* at 40:6–9. Defendants reiterated their request for these documents during the deposition, and again in a subsequent e-mail to Plaintiffs. *Id.* Exs. 9, 10.

During a meeting among counsel on October 11, Plaintiffs confirmed the existence of additional responsive documents that had not been produced. *Id.* Ex. 11, at 4. On November 4, Defendants wrote to Plaintiffs a fifth time, repeating the uncured deficiencies in the previous document productions and renewing their demand for documents requested during the Anders deposition. *Id.* Ex. 11. Plaintiffs responded 12 days letter, advising that, although they were "still searching for some of the documents," they would "produce shortly" Underdog's 2007 tax returns, 1099's issued to Underdog, documents evidencing damage to Anders's credit rating,[1] and documents evidencing work performed for other companies. *Id.* Ex. 12.

On November 18, the Court held a telephone conference with the parties, during which Defendants raised the issue of Plaintiffs' long-awaited document production. Defendants stated their intent to file a motion to compel in light of the December 10, 2010 discovery cut-off date.[2] Diaz assured the Court that his client was in the process of "getting the documents together," and that a supplemental production was forthcoming.[3] At the conclusion of the conference, the Court directed Anders to produce, *inter alia*, "copies of his tax returns" and "documents identified during his deposition as being in his possession" no later than November 23, 2010. *See* Order dated November 18, 2010 ("November 18 Order"). The Court treated the conference as a promotion conference pursuant to the Court's Individual Rules, and permitted Defendants to file a motion to compel if Plaintiffs failed to comply with the November 18 Order. *Id.*

---

**1.** The Amended Petition alleges damage to Underdog's credit rating as a result of Defendants' conduct. Pet. ¶ 99(d). Anders testified during his deposition, however, that his own credit rating suffered, not that of Underdog. Hammond Decl. Ex. 16 (Anders Dep. at 41:10–15).

**2.** By Order dated December 16, 2010, Judge Cote stayed this action with the exception that the parties were permitted to proceed with certain agreed-upon depositions, and resolution of the motion to compel.

**3.** In preparing this decision, the Court reviewed the recording of the November 18, 2010 telephone conference.

In three separate e-mails sent to Defendants the evening of November 23, Plaintiffs produced only a portion of the documents requested by Defendants: (1) an incomplete copy of Anders's 2007 federal tax returns; (2) five pages of a document reflecting payments made to Underdog in 2009 by customer Nan Ya Plastics; (3) four 1099 forms issued to Underdog in 2009; (4) 11 pages of a document reflecting equipment purchases or leases; and (5) a credit report for Anders that omitted his FICO score. *Id.* Exs. 13–14. Among the items missing from the November 23 production—but which were responsive to Defendants' April 2 discovery requests—were copies of 1099 forms issued by Underdog between 2007 and 2009; 1099 forms issued to Underdog in 2007 and 2008; Underdog's tax returns for 2007 and 2008; and complete copies of Anders's personal tax returns for 2007 and 2008.[4] The following day, Hammond again informed Diaz of the deficiencies in Plaintiffs' document production. *Id.* ¶ 23.

Plaintiffs supplemented their production on November 29, 2010 with 1099 forms issued to Underdog between 2006 and 2008 (but not 2009). *Id.* Ex. 15. Notably, the November 29 production evidenced inconsistencies with Plaintiffs' previous discovery responses. For example, Plaintiffs' interrogatory responses apparently identify five companies from which Underdog received income beginning in April 2007, while its 2007 and 2008 tax returns reflect an additional 12 companies not identified previously.[5] *Id.* ¶ 26. Defendants tried to reconcile the disparity in the various discovery responses by obtaining tax returns and other financial records from Plaintiffs' accountant, but Defendants were unable to serve him with a subpoena. *Id.* ¶ 27.

## B. The Motion to Compel and Plaintiffs' Subsequent Document Production

Frustrated with the incomplete nature of Plaintiffs' discovery responses, Defendants filed their motion to compel on December 3,

2010. The motion sought production of the following documents: (1) annual and quarterly tax returns for the years 2007 through 2010; (2) 1099's issued to Plaintiffs for the years 2007 through 2009; (3) 1099's issued by Plaintiffs to independent contractors for the years 2007 through 2009; (4) documentation of income received by Plaintiffs from other customers beginning in 2007; and (5) documents concerning equipment purchased by Underdog since April 2006. *See* Memorandum of Law in Support of Motion to Compel and for Costs and Sanctions, dated December 3, 2010.

On December 23, in an effort "to resolve the issues presented in the motion to compel," Plaintiffs produced nearly 200 pages, all of which are responsive to the April 2, 2010 document requests. Declaration in Opposition of Defendants' Motion to Compel and for Other Costs and Sanctions of Eduardo Diaz, dated December 27, 2010 ("Diaz Decl."), Ex. 21. Specifically, Plaintiffs produced Underdog's tax returns for 2007 and 2008; documents reflecting equipment purchases made by Underdog between 2006 and 2009; 1099 forms issued by Underdog in 2007, 2008, and 2009; additional 1099 forms issued to Underdog in 2007, 2008, and 2009; copies of Anders's 2007 and 2008 tax returns; and documents evidencing income received from other sources between 2008 and 2010. *Id.* ¶ 7 Exs. 1–19. In an e-mail to Hammond the same day, Diaz wrote that Plaintiffs' production represented his clients' "best[,] good faith attempt at obtaining and producing all the documents that Plaintiff had in its custody and that you require. We expect that ... you will withdraw your pending motion to compel." *Id.* Ex. 21, at 4.

The following day, Hammond responded that due to the Christmas holiday, Defendants would not have an opportunity to review fully the documents and could not agree to withdraw the motion before doing so. *Id.* Thereafter, Defendants' initial review of the December 23 production revealed that at least one document was incomplete: the 29

---

4. On November 16, 2010, Plaintiffs informed Defendants that Underdog had not yet filed tax returns for 2009. Hammond Decl. Ex. 12.

5. Plaintiffs' discovery responses were not included among the submissions to the Court.

pages identified in the Diaz Declaration as "Underdog's 2008 taxes" consisted of pages of Underdog's federal tax returns intermingled with pages of both federal and state tax returns for Anders and his wife. *Id.* Ex. 1. Hammond promptly informed Diaz of the haphazard organization of the 2008 tax returns, and expressed the belief that an in-depth review would reveal additional inconsistencies. *Id.* Ex. 21, at 6.

Nonetheless, Defendants advised the Court, in a letter dated January 7, 2011, that although Plaintiffs' December 23 document production is "tardy and inadequate," Defendants would withdraw the portion of the motion compelling discovery, but continue to seek fees and costs incurred in making the motion. Letter from Raymond G. McGuire dated January 7, 2011 ("McGuire Jan. 7, 2011 Letter"), at 1. At the direction of the Court, Plaintiffs responded to Defendants' request for fees and costs by letter dated January 21, 2011. *See* Order dated January 14, 2011.

## II. *DISCUSSION*

### A. Legal Standard

█ Rule 37 provides that if a motion to compel is granted, "or if the disclosure or requested discovery is provided after the motion was filed—the court *must* . . . award reasonable motion expenses incurred in making the motion." Fed.R.Civ.P. 37(a)(5)(A) (emphasis added). Thus, the Rule sets forth a rebuttal presumption in favor of awarding sanctions against a party that complies with discovery demands after the filing of a motion to compel. *See* 7 James Wm. Moore, *Moore's Federal Practice*, § 37.23 at 37–41 (3d ed.2008). The Court may not award reasonable expenses, however, if the nondisclosure was "substantially justified" or "other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(a)(5)(A)(ii), (iii).

█ Whether a party was substantially justified in resisting discovery is determined by "an objective standard of reasonableness and does not require that the party have acted in good faith." *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 262 (S.D.N.Y.1995) (citing *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101

L.Ed.2d 490 (1988)). Instead, conduct is substantially justified if there was a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the contested action. *See, e.g., Comprehensive Habilitation Servs. v. Commerce Funding Corp.*, 240 F.R.D. 78, 87 (S.D.N.Y.2006) (denying sanctions motion where opposing party raised valid relevancy objections to document requests). Plaintiffs' actions fail to satisfy this standard.

### B. Fee–Shifting Sanctions Are Appropriate

█ Plaintiffs provide no substantial justification for the delay in producing documents requested eight months earlier by Defendants, but produced only after the filing of the motion to compel. This is not a case in which the parties dispute opposing views of the law, such as a challenge to the relevancy of Defendants' discovery requests or a privilege invocation by Plaintiffs. In fact, it appears Plaintiffs at no point during the pendency of the litigation raised any objection to producing the documents. Hammond Decl. Ex. 8, at 2 ("Plaintiffs' [*sic*] did not object to any of the Requests . . ."). Instead, Plaintiffs repeatedly assured Defendants that the documents existed, were in Plaintiffs' possession, and would be produced "shortly." *See* Hammond Decl. ¶ 7 & Ex. 5, at 1 (June 25, 2010 telephone conversation between Diaz and Hammond), Ex. 16 (Anders Dep. at 21:18–22:4; 189:24–190:3; 40:13–15; 273:13–17), Ex. 10, at 4 (October 11, 2010 meeting), Ex. 12 (November 16, 2010 assurance that documents would be "produced shortly"); November 18 Order (Plaintiffs in process of "getting documents together").

█ Plaintiffs argue that their actions are justified because documents were produced "as they were available." Letter of Eduardo Diaz, dated January 21, 2011 ("Diaz Jan. 21, 2011 Letter") at 2 § B. Although litigants are obligated to supplement discovery responses as a case proceeds, discovery begins by making reasonable efforts to locate and preserve responsive documents at the outset of litigation, not in the final days of the discovery period. *See, e.g., Pension Comm. of the Univ. of Montreal Pension Plan v.*

*Banc of Am. Sec., LLC,* 685 F.Supp.2d 456, 465 (S.D.N.Y.2010) (An essential "step in the discovery process is collection and review"). Plaintiffs ignored this fundamental principle of discovery, and instead embarked on an indepth document search only in response to a motion to compel. Indeed, Plaintiffs acknowledge spending "close to 20 hours working with" counsel to locate the documents that comprised the December 23 production, thus illustrating the lack of diligence undertaken the prior eight months. Diaz Jan. 21 Letter at 3 § D(a). The record thus demonstrates that it was the filing of the motion to compel that was the catalyst for Plaintiffs' document production.

Surprisingly, Plaintiffs argue that Defendants failed to make a good-faith effort to obtain the documents prior to filing the motion to compel, suggesting that the dispute "could have been worked out by the parties." Diaz Jan. 21, 2011 Letter at 2 § C. This argument is belied by the record in this case. The record is replete with examples of Defendants' efforts to obtain discovery from Plaintiffs without court intervention. At the outset, Defendants granted a two-week extension of time for Plaintiffs to respond to their discovery requests, to which Plaintiffs responded three weeks beyond the agreed-upon production date. Hammond Decl. ¶¶ 5–6.

At least seven times between June and November 2010, Defendants requested that Plaintiffs provide complete copies of responsive documents produced in partial form, or that were not produced at all, the existence of which Plaintiffs repeatedly confirmed. *Id.* ¶ 7 (June 25, 2010 telephone discussion between Hammond and Diaz), & Exs. 3 (May 24, 2010 e-mail from Hammond to Diaz), 5 (July 8, 2010 letter from Hammond to Diaz), 8 (September 7, 2010 Letter from Raymond McGuire ("McGuire") to Diaz), 10 (Sept. 30, 2010 e-mail from Hammond to Diaz), 11 (Nov. 4, 2010 Letter from McGuire to Diaz), ¶ 23 (November 24, 2010 e-mail from Hammond to Diaz). In a final effort to avoid motion practice, Defendants waited ten days beyond the November 23 deadline set forth in the November 18 Order before filing the motion to compel, thus affording Plaintiffs an additional opportunity to comply. Moreover, Plaintiffs concede that Defendants "call[ed] and communicate[d] with [attorney Diaz] prior to [ ] filing [ ] the motion to compel." Diaz Jan. 21, 2011 Letter, at 2 § A.

Plaintiffs state, in conclusory fashion, that the documents comprising the December 23 production were not produced earlier because the documents were not in their possession. *Id.* at 2 § B. This argument is undercut by the record before the Court demonstrating that many, if not all, of the documents were in Plaintiffs' possession, custody, or control well in advance of December 23. For example, documentation of income received by Plaintiffs from other sources appears to have been printed from a database to which Plaintiffs have access. *See* Diaz Decl., Exs. 10–16. Similarly, the 27–page credit report, produced November 23, 2010, appears to have been printed on June 15, 2010. Hammond Decl. ¶ 22, Ex. 14. The reason such document—plainly responsive to Document Request No. 34—was not produced until five months later remains a mystery. Perhaps most significant, however, is Plaintiffs' eventual production of complete versions of documents previously produced in partial form—such as Anders's 2007 tax returns. Such production serves as a *de facto* admission that Plaintiffs possessed the documents in the first place. Hammond Decl. ¶ 21; Diaz Decl. Ex. 1.

■ Plaintiffs argue that sanctions are not warranted because they have not demonstrated bad faith. Diaz Jan. 21, 2011 Letter, at 3 § D(a). Plaintiffs confuse two distinct legal doctrines. Although bad faith is required before a court may exercise its inherent power to impose sanctions, Rule 37(a)(5)(A) contains no such requirement. *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.,* No. 03 Civ. 5562(JGK)(AJP), 2005 WL 1958361, at *12 (S.D.N.Y. Aug. 16, 2005) ("Under Rule 37(a), a finding of bad faith or willful misconduct is not required before the Court can award attorneys' fees."); *see also Cretella v. Liriano,* 370 Fed.Appx. 157, 159 (2d Cir. 2010) (summary order) (discussing court's inherent power to impose sanctions); *Texas Instruments Inc. v. Powerchip Semiconduc-*

*tor Corp.*, No. 06 Civ. 2305(SHS)(RLE), 2007 WL 1541010, at *9 (S.D.N.Y. May 24, 2007) (bad faith required to impose sanctions pursuant to court's inherent power, but not for "discovery-related abuses"). As discussed herein, Rule 37(a) mandates fee-shifting sanctions in the first instance. *See Bowne*, 161 F.R.D. at 262 ("Under Rule 37(a) ... the judge must impose costs on the opposing party or on his attorney."); 7 *Moore's Federal Practice* § 37.23[9], at 37–57 ("[T]he imposition of sanctions under this provision is mandatory.").

Plaintiffs assert that the "least harsh sanction ... is that each party bear its own costs," because *"[u]ltimately* Plaintiffs' produced a large amount of documents." Diaz Jan. 21, 2011 Letter at 3 § (D)(b) (emphasis added). Though novel, the argument is unpersuasive for several reasons. First, Plaintiffs' suggested "least harsh sanction" is in fact no sanction at all—hardly an appropriate remedy since Rule 37 establishes a rebuttal presumption in favor of sanctions in precisely these circumstances. Plaintiffs cite no case law in support of such a proposition.

▪ Second, in the context of sanctions for discovery violations, the "mildest is an order to reimburse the opposing party for expenses caused by the failure to cooperate," *JSC Foreign Econ. Ass'n Technostroyexport*, 2005 WL 1958361, at *10, while dismissal and default judgment are considered the harshest of remedies. *Southern New England Tel. Co. v. Global NAPs*, 624 F.3d 123, 144 (2d Cir.2010) ("[D]ismissal or default imposed pursuant to Rule 37 is a 'drastic remedy' generally to be used only when the district judge has considered lesser alternatives.").

▪ Third, as Rule 37(a) explicitly states, belated compliance does not insulate a party from sanctions. Fee-shifting is appropriate "even if the discovering party ultimately obtains, through Herculian and expensive effort, the discovery to which it was entitled." *Fendi Adele v. Filene's Basement Inc.*, No.

06 Civ. 244(RMB)(MHD), 2009 WL 855955, at *5 (S.D.N.Y. Mar. 24, 2009); *see also Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir.1979) ("[P]laintiff's hopelessly belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall."); *Disabled Patriots of Am. v. Niagara Grp. Hotels, LLC*, No. 07 Civ. 284S, 2008 WL 941712, at *3 (W.D.N.Y. Apr. 4, 2008) ("If production is made in the face of a motion to compel, the sanction of awarding these expenses must be imposed.").

▪ Finally, Plaintiffs contend that an award of reasonable costs and fees against them would be unjust because Underdog is "a small company that has been struggling after the loss of several trucks," and the imposition of costs and fees "would [ ] harm their business and their financial prospects." Diaz Letter, at 2 § C. While the Court understands that Plaintiffs' resources may be relatively limited, the record before the Court demonstrates that the failure to produce the requested documents is not justified, especially given how straight-forward most, if not all, of the production should have been. Sanctions may be warranted even where a party has limited resources.[6] *See, e.g., McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) ("[A]ll litigants, including pro ses, have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions.").

Because Plaintiffs proffer no substantial justification for failing to provide the requested documents, or argue that special circumstances make "an award of expenses unjust," Fed.R.Civ.P. 37(a)(5)(A), Defendants are entitled to recover the reasonable expenses incurred in making the motion.

---

**6.** In any event, Plaintiffs have not submitted any sworn testimony from any Underdog principal setting out how the imposition of costs here would harm the business. An attorney's statement to that effect in a letter to the Court is "[a]n inappropriate means of placing a factual issue before the Court." *Blass v. Capital Int'l Sec. Grp.*, 99 Civ. 5738(FB), 2001 WL 301137, at *3 (E.D.N.Y. Mar. 23, 2001) (citing *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir.2000)).

380

## III. *CONCLUSION*

Defendants' motion for fees and costs in GRANTED. Defendants shall file an affidavit of their reasonable expenses, including attorney's fees, incurred in making the motion to compel, within fourteen (14) days of the date of this Order. *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Trust Fund,* 450 F.3d 91, 96–97 (2d Cir.2006) (To recover attorneys' fees, "the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials."). Plaintiffs shall file any responsive pleading seven (7) days thereafter. The Court then will determine Defendants' reasonable expenses and the appropriate sanction amount.

SO ORDERED.