891 F.2d 48
 11 Employee Benefits Cas. 2129
 Anthony TRAPANI, Mary Hogan and Guy Ahearn, individually on
their own behalf and on behalf of all persons
similarly situated, Plaintiffs-Appellees,
v.
CONSOLIDATED EDISON EMPLOYEES' MUTUAL AID SOCIETY, INC., and
Paul R. Westerkamp, Defendants-Appellants.
 No. 115, Docket 89-7389.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 11, 1989.
Decided Dec. 4, 1989.
 
 1
 Norman Rothfeld, New York City, for plaintiffs-appellees.
 
 
 2
 Stuart Bochner, Bochner & Berg, New York City, for defendants-appellants.
 
 
 3
 Before FEINBERG and CARDAMONE, Circuit Judges, and METZNER, Senior District Judge*.
 
 METZNER, Senior District Judge:
 
 4
 Defendant Consolidated Edison Employees' Mutual Aid Society ("Mutual Aid") appeals from a judgment of the United States District Court for the Southern District of New York, directing Mutual Aid to pay class members the aliquot share of its benefit assets attributable to plaintiff-appellee's class. We agree with the district court that Mutual Aid is proscribed from retaining such funds, but reverse on the ground that the fund should not be distributed to the individual members of the class.
 
 Background
 
 5
 Mutual Aid provided health and welfare benefits to employees of Consolidated Edison Company of New York, Inc. ("Con Edison"), pursuant to collective bargaining agreements between Con Edison and Local 1-2 of the Utilities Workers Union of America, and between Con Edison and Local 3 of the International Brotherhood of Electrical Workers. Membership in Mutual Aid was open to these employees through payments from payroll deductions plus an equal amount paid by Con Edison.
 
 
 6
 In June 1983 both collective bargaining agreements expired and the employees went on strike. Subsequently, new collective bargaining agreements were executed. On September 1, 1983, an attorney for the Con Edison employees represented by Local 3 wrote a letter stating that the Local 3 members had ceased being members of the plan because of the new contract. In the new agreement with Local 3, Con Edison undertook to provide and administer a health and welfare benefits plan for Local 3 members. The agreement with Local 1-2 was not reached until July 31, 1984, and Mutual Aid furnished benefits to members of Local 1-2 until that date.
 
 
 7
 This class action was instituted to recover the aliquot share of Mutual Aid's assets as of October 1, 1983, attributable to payments from, or on behalf of Local 3 members. Any recovery was to be distributed to the individual members of the class. The court below (651 F.Supp. 400 (1987)) held that Mutual Aid provided an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act, 29 U.S.C. § 1002(1) (1982 & Supp. V, 1987) ("ERISA"), that Mutual Aid is subject to ERISA (29 U.S.C. § 1003), and that ERISA (29 U.S.C. § 1103(c)(1)) proscribes Mutual Aid's retention of benefit assets attributable to Local 3. However, plaintiffs' motion for summary judgment was denied in order to determine whether, in fact, Mutual Aid retained such assets. Judgment in the sum of $114,778.35 was entered in favor of the plaintiffs after a trial of the disputed issues before Judge Restani of the Court of International Trade, sitting by designation.
 
 Discussion
 
 8
 Section 403 of ERISA requires that the assets of an employee welfare benefit plan "be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries...." 29 U.S.C. § 1103(c)(1).
 
 
 9
 Mutual Aid contends that the above quoted language does not proscribe Mutual Aid's continued retention of the $114,778.35, citing O'Hare v. General Marine Transport Corp., 740 F.2d 160 (2d Cir.1984), cert. denied, 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985), as authority for its position. In that case a small number of employees of a single employer, who participated in a multi-employer pension fund, left the union and joined another union with its own pension fund. This court held that the monies contributed by the employer on behalf of these employees should not be returned to the employees or to the new fund. 740 F.2d at 173-74.
 
 
 10
 The court distinguished the case of Local 50, Bakery and Confectionary Workers Union v. Local 3, Bakery and Confectionary Workers Union, 733 F.2d 229 (2d Cir.1984), in which it was held that an employer's contributions to one union's health benefits fund should be transferred to a successor health benefits fund when all of the employees of the employer chose a new bargaining unit.
 
 
 11
 The facts in this case are akin to those found in Local 50, and come within the distinguishing factors set forth in O'Hare. These factors were that all of the employees of a single employer changed their bargaining representative in Local 50, while in O'Hare, only a small portion of the employees of a single employer made such change. Local 50 was concerned with a health benefits plan, while O'Hare dealt with a pension plan. The latter has different actuarial projections than health benefit plans, including the assumption that a certain percentage of the members will never receive benefits. We further noted that equitable considerations supported our conclusion in Local 50, since those workers who retained Local 50 as their bargaining representative would be unjustly enriched were the funds not transferred.
 
 
 12
 Finally, we stated in Local 50 that the successor fund was entitled to the aliquot share of the assets, for otherwise, the assets "would have inured solely to the benefit of the remaining participants in the Local 50 fund, and Entenmann's workers would have derived no benefit from that portion of their past contributions." Local 50, 733 F.2d at 231.
 
 
 13
 In this case there are stronger equitable considerations in favor of plaintiffs than in Local 50, since here the fund includes both employee and employer contributions. In addition, the change of funds in this case was initiated by Con Edison rather than by the employees. The decision in Local 50 controls our resolution here that Mutual Aid is not permitted to retain the funds in question.
 
 
 14
 The problem remains as to the distribution of the fund. It should not be divided among the members of the class. Such action would be inconsistent with the purpose of ERISA, which is the establishment of a plan to provide health and welfare benefits to all employees of an employer through the purchase of insurance or otherwise. 29 U.S.C. § 1002(1). To allow individual members to receive a cash rebate from the former benefits plan would constitute a windfall to those employees. Rather, the money should be deposited in Local 3's new benefits fund as was done in Local 50, supra.
 
 
 15
 29 U.S.C. § 1132(a)(3)(B) permits a civil action to be brought by a participant to obtain appropriate equitable relief to redress violations of ERISA. Plaintiffs could have sought equitable relief in this case directing that the monies in question be transferred to the successor fund provided for in the collective bargaining agreement between Local 3 and Con Edison. The fact that plaintiffs did not seek such relief is of no moment. A plaintiff is entitled to the relief justified by the facts proven at trial. Fed.R.Civ.P. 54(c). In Gins v. Mauser Plumbing Supply Co., 148 F.2d 974, 976 (2d Cir.1945), the court said:
 
 
 16
 "[A]nd even the demand for judgment loses its restrictive nature when the parties are at issue, for particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not."
 
 
 17
 The judgment below is modified as indicated above, and as so modified, affirmed.
 
 
 
 *
 The Honorable Charles M. Metzner of the United States District Court for the Southern District of New York, sitting by designation