109 F.3d 111
 73 Fair Empl.Prac.Cas. (BNA) 1571,
70 Empl. Prac. Dec. P 44,573
Mary Ann LUCIANO, Plaintiff-Appellant-Cross Appellee,
v.
The OLSTEN CORPORATION; Frank N. Liguori; Gordon J.
Bingham; Martin Gelerman,
Defendants-Appellees-Cross-Appellants.
 Nos. 838, 1153, Dockets 96-7814, 96-7816.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 11, 1996.
Decided March 21, 1997.
 
 Leon Friedman, New York City (Sharyn Grobman, on the brief), for Plaintiff-Appellant-Cross-Appellee.
 Gary D. Friedman, Mayer, Brown & Platt, New York City (Philip A. Lacovara, Mayer, Brown & Platt, on the brief), for Defendants-Appellees-Cross-Appellants.
 Anne Golden, New York City (Matthew D. Brinckerhoff, on the brief), for Amicus Curiae National Employment Lawyers Association/New York.
 Before: OAKES, ALTIMARI and PARKER, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 This is an appeal from a judgment of the United States District Court for the Eastern District of New York (Spatt, J.), awarding attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k) in a gender-based employment discrimination action. Plaintiff-appellant-cross-appellee Mary Ann Luciano, the prevailing party in this action to whom fees were awarded, contends principally that the district court erred in calculating a fee based on the prevailing rates charged by competent employment discrimination lawyers in the Eastern District, rather than the higher prevailing rates charged in the Southern District. In addition, Luciano challenges the district court's decision to reduce the total number of compensable hours. For the reasons set forth below, we affirm the judgment of the district court.
 
 BACKGROUND
 
 2
 Luciano sued her employer defendant-appellee-cross-appellant The Olsten Corporation ("Olsten"), and three of its executive officers, defendants-appellants Frank N. Liguori, Gordon J. Bingham and Martin Gelerman (together with Olsten, hereafter collectively "defendants" or the "Company" or "Olsten"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., alleging that the Company failed to grant her a promised promotion to vice president and subsequently terminated her because of her gender. The events underlying this case are discussed in the companion opinion, see Luciano v. Olsten Corp., --- F.3d ---- (2d Cir.1997), issued concurrently with this opinion and with which familiarity is presumed. We set forth only the facts relevant to this appeal.
 
 
 3
 On November 9, 1995, following a month-long trial, the jury returned a verdict in favor of Luciano and awarded her $150,714 in compensatory damages, $11,400 in emotional distress damages, $17,713 for other expenses, plus $5,000,002 in punitive damages. Finding that the verdict with regard to liability and damages was supported by the evidence, the district court: (1) denied the defendants' motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) or a new trial pursuant to Fed.R.Civ.P. 59(a); (2) denied the defendants' motion to vacate the jury's punitive damage award, but reduced the sum to the statutory cap of $300,000 pursuant to 42 U.S.C. § 1981a(b)(3)(D); and (3) granted Luciano's motion for prejudgment interest.
 
 
 4
 Following the verdict, which verdict and subsequent judgment we affirm today, Luciano submitted an application for attorneys' fees in the amount of $483,189.25 and costs in the amount of $46,853.01, pursuant to § 42 U.S.C. 2000e5(k). The request for attorneys' fees was based on hourly rates of $325 for lead counsel, Janice Goodman, $175 for a fifth-year associate, Loren Gesinsky, and $75 for a third-year law student, Jill Raymond. In her affidavit for fees, Goodman submitted that: (1) she has litigated employment discrimination cases for over twenty-four years; (2) she has lectured and written extensively in the field of employment discrimination and is recognized as a leader in her field; (3) ordinarily, she takes employment discrimination cases on a contingency basis; (4) she does not have a regular billing rate for litigation of Title VII, ADEA and ADA claims because none of the clients she represents are able to afford attorneys such as herself, and therefore relies primarily on court awarded fees; and (5) the hourly rate that she sought was the fair market value for her services. In addition, Luciano submitted affidavits from other civil rights practitioners who stated that $325 per hour rate is a reasonable market rate for persons of Goodman's skills and experience. Gesinsky's affidavit stated that his hourly billing rate as an associate at Goodman's firm was $175 per hour.
 
 
 5
 Luciano submitted time records seeking to recover for 755.30 hours expended by Goodman, 1,321.91 hours expended by Gesinsky, and 85.00 hours expended by Raymond. In addition, Luciano sought an upward adjustment of her attorneys' fees based on alleged "lost opportunities," the results obtained, the contingency of her fee, and the "undesirability" of the case.
 
 
 6
 The defendants objected to the fee request on the grounds that: (1) Luciano requested excessive hourly rates; (2) Luciano sought to recover for an excessive number of hours; (3) the time entries showing hours expended were vague and inadequately documented; (4) Luciano sought to recover for hours that were not compensable, or compensable at less than the full hourly rate, such as hours spent traveling or on clerical tasks; and (5) Luciano was not entitled to an upward adjustment of the fee award.
 
 
 7
 In considering Luciano's fee application, the district court concluded that having prevailed on claims under Title VII and the New York Human Rights Law, Luciano was entitled to attorneys' fees and costs, and thus awarded her $283,108.28 in attorneys' fees and $45,827.76 in costs. The district court reduced the hourly rates and number of hours in Luciano's fee request, and declined to upwardly adjust the fee award. The district court based its decision on its findings that the market rates in the prevailing community for similar services by lawyers of reasonably comparable skill, experience, and reputation, were as follows: $200 for partners, $135 for associates, and $50 for law student/paralegals. The district court then exercised its discretion to upwardly adjust Goodman's rate to $225 per hour "based on the difficulty of the issues presented, the years of experience and expertise of the plaintiff's attorney in the field of employment law, and the extent of the success achieved." The district court declined, however, to further enhance the fee award "because the factors that Ms. Goodman argues will support an upward adjustment of her hourly rate have been considered in determining the lodestar figure."
 
 
 8
 Concluding that the number of hours reasonably expended on the case was compounded by the "uncooperative or obstructive conduct" of the attorneys, the district court reduced the number of hours for which Luciano sought compensation by 15%, its estimation of her attorneys' share of the "excessive time" expended during the case. In addition, the district court reduced compensation for specific tasks by: (1) awarding fees for travel time at half of the reasonable hourly rates for Goodman and Gesinsky; (2) awarding fees for time spent by Gesinsky at trial at half of his lodestar hourly rate; and (3) awarding fees for time Gesinsky spent on "clerical" work at $50 per hour, the hourly rate for paralegal work.
 
 
 9
 Luciano moved for reconsideration concerning only the issue of the appropriate hourly rates for Goodman and Gesinsky, but the district court denied the motion. Luciano now appeals the attorneys' fee award. Olsten now cross-appeals to prevent Luciano from enforcing the attorneys' fees judgment, contending that if it prevails in its appeal from the underlying judgment, the award of attorneys' fees at issue in the present cross-appeal would necessarily have to be vacated. Because we have affirmed the underlying judgment, we need not reach the merits of Olsten's cross-appeal.
 
 DISCUSSION
 
 10
 Arguing that her Manhattan-based counsel should be compensated at their regular New York City billing rates, Luciano argues principally that the district court: (1) erred in awarding a fee based on the prevailing hourly rates charged by competent employment discrimination lawyers in the Eastern District, rather than the higher prevailing rates charged in the Southern District, and (2) improperly reduced the compensable hours. Luciano's arguments are unpersuasive.
 
 
 11
 The statute governing employment discrimination actions provides in pertinent part:
 
 
 12
 In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee ... as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.
 
 
 13
 42 U.S.C. § 2000e-5(k). The district court is given broad discretion in granting a fee award and assessing a reasonable fee under the circumstances of the case. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Thus, absent an abuse of discretion or an error of law, we will not disturb the district court's calculation of reasonable attorney's fees. See Sands v. Runyon, 28 F.3d 1323, 1333 (2d Cir.1994).
 
 
 14
 (1) Hourly Rate Determinations
 
 
 15
 In determining reasonable attorney's fees, the district court must calculate a "lodestar" figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate. Blanchard v. Bergeron, 489 U.S. 87, 94, 109 S.Ct. 939, 944-45, 103 L.Ed.2d 67 (1989); see Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir.1994). The "lodestar" figure should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). It is well-established that the "prevailing community" the district court should consider to determine the "lodestar" figure is "the district in which the court sits." Polk v. New York State Dep't of Correctional Servs., 722 F.2d 23, 25 (2d Cir.1983).
 
 
 16
 In the case before us, the district court relied on the prevailing market rates in the Eastern District of New York, rather than the Southern District of New York. The district court determined that the market rates in the Eastern District for lawyers in comparable cases is $200 per hour for partners, $135 per hour for associates, and $50 for paralegals. These rates are in line with the rates that have been recently awarded in the Eastern District of New York. See, e.g., First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, No. CV95-2418, 1996 WL 521410, at * 2 (E.D.N.Y. Sept.3, 1996); Bourgal v. Atlas Transit Mix Corp., No. CV-93-0569, 1996 WL 75290, at * 6 (E.D.N.Y. Feb. 7, 1996); New York State Ass'n of Realtors, Inc. v. Shaffer, 898 F.Supp. 128, 133 (E.D.N.Y.1995); DeVito v. Hempstead China Shop, Inc., 831 F.Supp. 1037, 1044 (E.D.N.Y.1993); Cabrera v. Fischler, 814 F.Supp. 269, 288 (E.D.N.Y.1993), aff'd in rel. part, 24 F.3d 372 (2d Cir.1994), cert. denied, 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994); Cruz v. Local Union No. 3, 150 F.R.D. 29, 34-35 (E.D.N.Y.1993), aff'd in rel. part, 34 F.3d 1148 (2d Cir.1994); Nu-Life Constr. Corp. v. Board of Educ., 795 F.Supp. 602, 606 (E.D.N.Y.1992), aff'd in rel. part, 28 F.3d 1335, 1342-43 (2d Cir.1994). Because this action was commenced and litigated in the Eastern District of New York, the district court's reliance on these rates was proper.
 
 
 17
 The product of the number of reasonable hours times a reasonable hourly rate, however, does not end the inquiry. See Hensley, 461 U.S. at 433-34, 103 S.Ct. at 1939-40. There remain other considerations, based on the facts of the particular case, that may lead the district court to ultimately make an adjustment to the hourly structure. See id. In the instant matter, Luciano asserts that the district court failed to consider the relevant criteria and thus based its award on an "artificial establishment of a presumptive $200 rate for partners in all civil rights cases." Contrary to Luciano's assertion, the record indicates that the district court considered the complexity of the issues presented, Goodman's experience and expertise in the field of employment law, as well as the extent of success achieved and computed the fee award based on an increased hourly rate above the prevailing market rate of $200 per hour for partners to $225 per hour.
 
 
 18
 Moreover, the district court did not abuse its discretion in determining that the additional factors Luciano argues should be considered, such as Goodman's preclusion of other employment, the contingent nature of the lawsuit, her actual billing practice, and her superior skill, were subsumed within this lodestar calculation. See City of Burlington v. Dague, 505 U.S. 557, 562, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992) (contingency factor cannot lead to upward adjustment of fee); Blum, 465 U.S. at 898-900, 104 S.Ct. at 1548-50 (novelty and complexity of issues, quality of representation, special skill and experience of counsel and results obtained are factors fully reflected in the lodestar calculation, and cannot serve as independent bases for adjusting the fee award).
 
 
 19
 Accordingly, in light of the prevailing hourly market rate in the Eastern District of New York and all of the circumstances of this case, we conclude that the district court's hourly rates determinations were not an abuse of discretion.
 
 
 20
 (2) Reduction of Compensable Hours
 
 
 21
 Next, we consider Luciano's challenge to the district court's decision to reduce the number of compensable hours for "contentious" behavior and for unnecessary second counsel at jury selection and trial.
 
 
 22
 In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir.1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir.1985). If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation. See Hensley, 461 U.S. at 434, 103 S.Ct. at 1939-40; Lunday, 42 F.3d at 133.
 
 
 23
 A review of the record in the case before us indicates that both parties submitted evidence detailing the excessive time wasted in this litigation by uncooperative and contentious behavior. Agreeing with these submissions, the district court stated:
 
 
 24
 The Court agrees that this litigation was characterized by a notably high level of contentiousness and lack of cooperation that resulted in excessive requests for Court intervention and increased the number of hours spent on the case by the attorneys.... [I]t is clear that both lead attorneys contributed to the highly antagonistic atmosphere that pervaded every aspect of the litigation. The Court declines to compensate counsel for the plaintiff for her share of this unnecessary and stressful litigation.
 
 
 25
 Luciano v. Olsten Corp., 925 F.Supp. 956, 964 (E.D.N.Y.1996).
 
 
 26
 Given the district court's first-hand knowledge of this litigation and its extensive contact with the parties before, during and after the month-long trial of this lawsuit, it was proper for the district court to exclude excessive hours Luciano's counsel expended on the action because of unnecessary contentious conduct. See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1057-58 (2d Cir.1989) ("Having tried the case, the district court has the best vantage point from which to assess ... the amount of time reasonably needed to litigate a case."). Moreover, a district court can exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours. See In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 237-38 (2d Cir.1987). Accordingly, we find no abuse of discretion in the district court's determination that because 30% of the hours expended in this action was the product of contentious conduct between the lead attorneys, it was appropriate to reduce the plaintiff's counsel's requested hours by 15%.
 
 
 27
 With respect to the district court's decision to reduce the compensable hours for the time Gesinsky spent at jury selection and trial, we find that it was within the purview of the court's discretion to determine whether or not the actual time expended by an additional attorney was reasonable. See Stryker Corp. v. Intermedics Orthopedics, Inc., 898 F.Supp. 116, 127 (E.D.N.Y.1995), aff'd, 96 F.3d 1409 (Fed. Cir.1996); Mendoza v. City of Rome, 162 F.R.D. 260, 264 (N.D.N.Y.1995) (adjusting hours expended on the action because it was unnecessary for two attorneys to attend examinations before trial and the trial); Copeland v. Marshall, 641 F.2d 880, 891 (D.C.Cir.1980) ("where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time").
 
 
 28
 In the instant matter, a review of the record indicates that Gesinsky's billing entries reported approximately 114 hours for time spent in court as second counsel for jury selection, trial days and the charge conference. In addition, the record shows Gesinsky questioned only one minor witness at trial, and during the trial, the district court specifically acknowledged Gesinsky's lack of meaningful participation. Given the district court's determination that during these stages of the litigation the number of hours Gesinsky reported was excessive, the district court's disallowance of half of his hours in counsel fees for time unreasonably expended was not an abuse of its discretion.
 
 
 29
 We have examined all of Luciano's remaining arguments on appeal and find them to be without merit.
 
 CONCLUSION
 
 30
 Based on the foregoing, we affirm the judgment of the district court.