**ENVIROSOURCE, INC., Plaintiff,**

v.

**HORSEHEAD RESOURCE DEVELOPMENT COMPANY, INC., Defendant.**

**No. 95 CIV. 5106 (TPG)(SEG).**

United States District Court,
S.D. New York.

Jan. 5, 1998.

Daniel B. Goldman, Robert A. Longman, Kasowitz, Hoff, Benson, Torres & Friedman, LLP, New York City, for Plaintiff.

Eric T. Schneiderman, Thomas A. Donovan, Kirkpatrick & Lockhart LLP, New York City, Barry M. Hartman, Kirkpatrick & Lockhart LLP, Washington, DC, for Defendant.

## OPINION

GRUBIN, United States Magistrate Judge.

This decision concerns plaintiff's application for sanctions in the amount of $203,000 or, in the alternative, $141,985 incurred as legal fees, through June 5, 1997, as a result of defendant's failure to complete production of documents. Familiarity with my opinion of July 16, 1996 is assumed, and the cheerless history of defendant's conduct in this case to that date as described therein will not be repeated. It suffices for current purposes to quote one passage from that opinion:

> In over 12 years on the bench, I have rarely imposed sanctions. I believe they should be used very sparingly and as a last resort. When I awarded them herein, I did not do so lightly. (The conduct for which they were imposed was so inexplicable that I was troubled and thought for some time that perhaps I misunderstood what was occurring. Sanctions were not imposed until I determined, unfortunately, that there was no misunderstanding.) Nor do I lightly provide for their possible increase after 30 days herefrom. This has been one of those rare cases, as I have tried to express summarily above, where the violation of discovery orders and the flouting of the rules of discovery has been extraordinary and, I believe, inexcusable and has prejudiced the plaintiff, both because this conduct has delayed the case and because it has presumably forced plaintiff to incur further expense insofar as plaintiff's counsel has had continually to contact the court for assistance.

*Envirosource, Inc. v. Horsehead Resource Development Co.*, No. 95 Civ. 5106(AGS)(SEG), 1996 WL 399823 at *4 (S.D.N.Y.1996). At that time, an order requiring payment of $500 per day by defendant until it completed production was in effect (and remains so at this time). That opinion directed that production be completed within 30 days thereof or sanctions would be increased.

Defendant did not make production within 30 days but, rather, obtained new attorneys. Although those new attorneys, like their predecessors, apparently made substantial efforts to search and produce and believed, as

they informed the court in September 1996, that the search and production was finally complete, substantial amounts of additional documents continued to appear thereafter that had been "overlooked" by defendant. Nine months later, on June 5, 1997, when plaintiff originally requested the court to order that sanctions that had been awarded to that date be actually paid by defendant, plaintiff had only recently learned of hundreds of boxes of documents that had never been searched which, defendant admitted, had been discovered only recently and not yet reviewed. To date, there remains a doubt in this court's mind as to whether defendant has made a diligent, good faith search for all documents and turned them over.[1]

I have carefully considered the parties' submissions on the pending application and find that plaintiff is entitled to compensation for attorney's fees in the amount of $84,950.70. I do not intend to address in detail herein all the various arguments and contentions advanced by the parties. Some of them are merely quibbles and others, especially defendant's, are unmeritorious positions that I have rejected time and again over the last two years. For the parties' benefit, however, I will address the main issues they raise.

The sanctions orders were always intended by me to be compensation to the plaintiff for the expense incurred in its continual need to apply to the court and otherwise pursue defendant so that defendant would do simply what it was required to do as a matter of course. Not only did defendant fail to comply with its obligations under the Federal Rules and the local rules of this court, but it thereafter boldly failed to comply with my orders (and Judge Schwartz's) that attempted to correct the situation. As I had stated orally on many occasions and then in my July 16, 1996 opinion, "the violation of discovery orders and the flouting of the rules of discovery ... has prejudiced the plaintiff both because this conduct has delayed the case and because it has presumably forced plaintiff to incur further expense insofar as plaintiff's counsel has had continually to contact the court for assistance." 1996 WL 399823 at *4. The amount of sanctions was what I believed would serve to ensure reimbursement of plaintiff for amounts incurred. The increase from $100 per day to $500 per day reflected the increasing time spent by plaintiff in pursuit. I also believed that the sanctions, and especially the increase, would bring about prompt compliance, so that, if defendant had produced its documents by the dates I continued to set, the sanctions would have stopped accruing. Unfathomably, however, defendant did not, so that an amount clearly beyond plaintiff's incurred expense has accrued on paper under the terms of my orders. Plaintiff is entitled to compensable expenses, but not to a windfall.

I reject defendant's argument that the accrual of sanctions should be deemed to have ended on September 30, 1996 because at that time it had made "substantial compliance" with its document production obligations. The "substantial compliance" phrase is one that defendant has used at least since March 1996 and at every conference and argument thereafter. It was consistently the case, however, that plaintiff has had to uncover that "substantial compliance" had not been made. Moreover, although I do believe substantial compliance was eventually made by October 1996, defendant seems to continue to ignore the fact that my orders for production, entered almost two years ago, directed that all documents, except those to which objections had been made (which objections have long since been ruled upon), were to be produced. The orders consistently directed "*complete*" production.[2] A lawsuit can hard-

---

1. I note in this regard that on June 5, 1997 I directed defendant's attorney to visit his client's facilities if necessary for him finally to be sure that a complete search would be made and to let me know the results. However, I have not received any confirmation from him. *See* Transcript of Pretrial Conference, June 5, 1997, pp. 17–18.

2. At the June 5, 1997 conference I informed defendant, when it raised its "substantial compli-

ance" contention that I was "not going to revisit [it]." I continued, "There is a long history here ... [I]t is quite clear that what was meant was complete production. That's been what was meant for I don't know how long ... A year and a half ... We've been through this ... I have rejected that argument. I don't want to hear it again. My order has always been quite clear." Transcript of Pretrial Conference, June 5, 1997, pp. 8–9. Nevertheless, defendant argues it again herein.

ly proceed with a party's having provided only "substantial" discovery (by which, in this case, defendant always referred to numbers of documents produced, not to numbers of relevant, material documents). Moreover, although I was informed by defendant in September 1996 that production was complete, except for approximately ten "just discovered" boxes, eight months later, at the June 5, 1997 conference, defendant's counsel admitted that he had only "recently" learned of hundreds of boxes in storage that had never been searched. Whether or not those boxes contain relevant documents that are not duplicative of what had already been produced (a question as to which the record is silent) is not the point. What is at issue is defendant's continuing failure to perform its obligations in the diligent, methodical and good faith manner required by law. Because of that failure, plaintiff had to continue to analyze what was produced in an effort to learn what was not and then apply to the court for assistance.

I reject defendant's contention that plaintiff's press release, indicating its intention to withdraw this action, and subsequent motion for voluntary dismissal mandates a denial of fees. Whether or not plaintiff pursued this suit improperly is an issue in that motion which is currently pending before Chief Judge Griesa, and I express no view on it. If defendant should ultimately prevail on the issue, it will presumably be provided an adequate remedy at that time. The issue has no bearing herein.

Defendant continues to ignore the fact that the issue is not whether sanctions should be awarded; they were awarded long ago for its flagrantly improper actions. The only issue now is the amount of those sanctions. Even if defendant were correct in its interpretation of plaintiff's motives in this lawsuit, defendant did not have the right to flout all discovery obligations and orders of the court. I further note that it unilaterally decided to grant itself a discovery stay purportedly on the very same basis—that plaintiff brought an unmeritorious suit for improper motives— even after both I and Judge Schwartz ruled otherwise. Its motion to dismiss the action

on those grounds, *inter alia,* was rejected by Judge Schwartz. Defendant continued thereafter to violate the discovery orders. In opposition to the payment of sanctions, defendant now pulls out every argument it can devise to deny plaintiff compensation for the legitimate expenses it incurred, *inter alia:* no payment should be awarded because plaintiff's motives were improper; no payment should be made because plaintiff's time records are deficient; if paid, payment should be to the court, not plaintiff, because of the reasons for the sanctions; if paid to plaintiff, payment should be in a reasonable amount which, in defendant's minimalist view, comes to $14,010. All its arguments are without merit for numerous reasons apart from the salient fact that they ignore we are not considering whether sanctions should be awarded. That issue was decided in no uncertain terms in March 1996, and events since that time have only served to confirm the correctness of the decision.[3]

Defendant ignores another critical fact, which is that the Federal Rules of Civil Procedure essentially *mandate* an award of attorney's fees under the instant circumstances. Federal Rule 37(a)(4)(A) provides that if a motion to compel discovery is granted, "the court *shall* ... require the party whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion including attorney's fees...." The exceptions to this requirement are not pertinent herein. *See, e.g., Fund Comm'n Svc., II, Inc. v. Westpac Banking Co.,* No. 93 Civ. 8298(KTD)(RLE), 1996 WL 469660 at *5 (S.D.N.Y. August 16, 1996); *Bowne of New York City, Inc. v. AmBase Corp.,* 161 F.R.D. 258, 262 (S.D.N.Y.1995). Beyond expenses of the motions and applications that plaintiff was forced to make for over one and one-half years, defendant is also liable for expenses under Rule 37(b)(2) for its inexcusable violation of the court's orders requiring disclosure. That rule also makes an award of attorney's fees mandatory in the instant situation. I might also note that an award is

---

3. Indeed, it is my belief that were it not for the sanctions orders and opinions relating thereto, and plaintiff's patient but persistent efforts, no

documents other than those already in the public realm might have ever been obtained from defendant.

mandatory as well herein under the provisions of Rule 16(f) because the scheduling orders in this case were continually violated by defendant which simply granted itself a stay of discovery because it had filed a motion for dismissal; continued to "stay" discovery even after I overruled that position several times; persisted even after Judge Schwartz rejected a subsequent "motion for a preliminary injunction" to stay discovery; and continued to miss discovery deadlines after its own justification for doing so, its motion to dismiss, was largely denied.[4] This case is in a procedural posture that it should have reached about 18 months ago.[5]

■ In determining reasonable attorney's fees, a court must first calculate a "lodestar" figure based upon the number of hours reasonably expended by counsel multiplied by a reasonable hourly rate. *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (citing *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 944–945, 103 L.Ed.2d 67 (1989)). The fee applicant bears the burden of documenting the hours expended and the hourly rate. *See, e.g., Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir.1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). To establish hours spent by each attorney at a firm, the fee applicant is to furnish contemporaneous time records specifying the date, the hours and the nature of the work done, *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir.1983), although typed listings drawn from computerized billing records or attorney affidavits based on contemporaneous records will suffice if they "provide a fully detailed itemization of the dates that work was performed, a description of the work done, and the time expended." *Cruz v. Local Union No. 3 of*

*Int'l Bhd. of Elec. Workers*, 34 F.3d at 1160; *see also S.J. Berwin & Co. v. Evergreen Entertainment Group, Inc.*, No. 92 Civ. 6209(WK), 1994 WL 501753 at *2 (S.D.N.Y. Sept.14, 1994); *David v. Sullivan*, 777 F.Supp. 212, 223 (E.D.N.Y.1991).

■ The hourly rates are to be determined by the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Luciano v. Olsten Corp.*, 109 F.3d at 115 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)). The applicable community is the district in which the court sits, *id.*, and while affidavits from other similarly situated attorneys are "desirable," they are not indispensable in order to establish the appropriate hourly rate. *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d at 1160. A court may rely on its own knowledge of hourly rates in the community or may consider awards made in other cases. *Id.; Association for Retarded Citizens of Connecticut, Inc. v. Thorne*, 68 F.3d 547, 554 (2d Cir.1995).

■ After calculating the lodestar amount, a court may increase or reduce it on the basis of "subjective factors, including 'the level of complexity of the issues involved, the skill of the attorneys involved, overstaffing and inflated hours.'" *Fund Comm'n Svc., II, Inc. v. Westpac Banking Co.*, 1996 WL 469660 at *6 (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. at 266–67). However, there is a "'strong presumption' that the lodestar represents the 'reasonable' fee," *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088,

---

4. I find quite curious defendant's current contention that, with respect to plaintiff's original motion to compel, the court "notably did *not* grant [plaintiff's] request for attorney's fees. Accordingly, the Court implicitly found that [defendant's] initial objections to the document request, which were based on the pendency of the motion to dismiss, were substantially justified." Letter of Barry M. Hartman, Esq. to the court, September 15, 1996, p. 4 (emphasis in original). The sanctions awarded pertain almost entirely to the "original" motion to compel which is what has

always been at issue, and I made it quite clear in my very first conference with the parties and at all times thereafter that defendant's failure to produce because of the pendency of its motion to dismiss was improper.

5. Although the mandatory nature of awards under these Rules has in large part not been observed by the courts since it came into effect by the 1993 amendments to the Rules, if ever there were a case that cried out for an award of expenses, this is it.

3098, 92 L.Ed.2d 439 (1986)), and a party asking the court to depart from the lodestar amount bears the burden of proving that the departure is necessary for the calculation of reasonable fees. *Grant v. Martinez,* 973 F.2d 96, 101 (2d Cir.1992), *cert. denied sub nom. Bethlehem Steel Corp. v. Grant,* 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993); *United States Football League v. National Football League,* 887 F.2d 408, 413 (2d Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990).

■ To establish the hours expended by its attorneys, plaintiff has submitted an affidavit containing a typed listing based on contemporaneous time records of the dates that work was performed, the hours worked and a description of the work. Affidavit of Robert A. Longman, Esq. dated August 26, 1997, ¶ 3. I find the documentation provided by plaintiff to be adequate. *See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers,* 34 F.3d at 1160; *S.J. Berwin & Co. v. Evergreen Entertainment Group, Inc.,* 1994 WL 501753 at *2; *David v. Sullivan,* 777 F.Supp. at 223.

■ Defendant has not presented any proof to overcome the presumption that the lodestar is reasonable. Defendant's affidavit and letter briefs, like its blunderbuss objections to plaintiff's document request that began this entire two-year fiasco, contains many general conclusory objections to plaintiff's submission but few specifics to support its argument. For example, its assertion that the application "clearly is not based on contemporaneous time records" is simply not the case. Defendant bears the burden here of showing modification of the lodestar amount is required, and its essentially "kitchen-sink" approach is not useful. Even the few specific challenges it makes are for the most part belied by the facts and/or logic. For example, it claims that the presence of two attorneys for plaintiff was not necessary at a discovery hearing before me, pointing out that only one did most of the talking. But current counsel was not involved at that time, and I remember that major hearing quite well. I know that both attorneys had

been involved in the review of documents and the discovery applications to that point, and that while one may not have spoken on the record, his presence was needed. Defendant similarly faults plaintiff's fee request as unreasonable because "partners were performing extremely unchallenging work such as taking notes on redactions and reviewing documents. This work is generally performed by mid-level and junior associates." Letter of Barry M. Hartman, Esq. to the court, dated September 15, 1997, p. 6. In the context of this case, however, where it was found that plaintiff's past redactions of purportedly irrelevant material had been, to the contrary, of critically relevant material, one can hardly fault plaintiff's attorneys for having the work performed by those most familiar with the somewhat complex facts of the case and the document discovery to date. Moreover, it seems hardly defendant's role to dictate who should be assigned to perform required legal work, especially when that work was made necessary and more complicated by defendant's improper conduct.

On the subject of redactions, defendant is mistaken in several ways. First, with respect to the September 1996 redactions in 6,500 documents, no ruling was ever made that the redactions were proper or that sanctions were or were not appropriate in connection therewith. I found that defendant had failed to set forth information by which it could be determined if the objections were valid and, after I ordered defendant to specify the nature of its redactions with a view toward possible *in camera* examination, defendant decided to produce the documents unredacted.[6] Second, contrary to defendant's contention, the documents *were* produced late. If the objection had been valid, it is one that should have been made over a year earlier (although the existence of the documents, like that of most of defendant's other documents, was purportedly unknown to defendant at that time). Third, although defendant is quick to claim that redacted information eventually was contained in only 3–6% of the documents defendant produced, it ignores the history as to how unredacted

---

**6.** I might point out that while defendant contends its redactions were proper (as to which the court has no information) and, therefore, that no fees relating to plaintiff's time with respect thereto should be allowed, Fed.R.Civ.P. 37(a)(4)(A) requires that fees be awarded "[i]f the motion is granted *or if the disclosure or requested discovery is provided after the motion was filed.*"

information came to be disclosed, perhaps because current counsel was not involved at the time of the earlier events. After resisting any production for close to a year, defendant, contrary to my earlier directives as to what types of information could be redacted and what types were to be produced, provided documents in which it had redacted what it said was "a minimal amount of information which is extremely commercially-sensitive and is not relevant to this action." As I pointed out in my opinion of July 16, 1996, however:

> [I]n reality [defendant] has redacted precisely the very information that is at the heart of this action and that plaintiff would need to prove the claims herein (and that defendant would need to rebut them). Thus, defendant has taken out of the contracts, as well as the documents showing negotiations with customers, all of the dates, quantities, costs, fees and credits and terms of duration of the contracts, proposed contracts and communications relating to them. In this Sherman Act case alleging defendant's attempt to monopolize the market by coercing customers into signing long-term exclusive requirements contracts and imposing higher fees on those which refuse, such conduct is inexplicable.

1996 WL 399823 at *3. It was only as a result of plaintiff's persistence and the court's assistance that the redactions were eventually reduced to a small amount of information subsequent to defendant's having withheld and then redacted essentially all information that would have been relevant to this case. Thus, I also reject defendant's finding fault now with plaintiff's counsel for having spent time trying to sort out the later redacted information and applying to the court concerning it. Plaintiff could hardly be expected at that point simply to accept defendant at its word that it had redacted only irrelevant material.

 I have thoroughly reviewed plaintiff's counsel's billing documentation and my own records of proceedings in this case. I find the hourly rates charged for the various persons at the firm who worked on the matter within the customary range I know attorneys charge in this city. Plaintiff has not, however, provided the court with any information concerning the experience of those persons or, indeed, any information about them at all beyond their hourly rates, and some are persons whom I have never directly seen in connection with any written work or appearance before me. It is thus difficult to assess whether the time spent vis-a-vis results achieved was justified. I am, of course, cognizant of the fact that the work reviewing documents herein, many of which are quite technical, and determining where documents might fit on the continuum of past production had to be a time-consuming task. At the same time, however, I believe completing that work efficiently can depend to a great extent on the experience of those doing it, their technical knowledge and familiarity with the document production issues as well as their experience in the relevant field (antitrust) and familiarity with the issues in this particular case. On occasions when a fee applicant has failed to submit evidence concerning her experience or the reasonableness of the claimed rate, this court has reduced the hourly rate by 15%, which I find appropriate to do herein. *See, e.g., Fund Comm'n Svc., II, Inc. v. Westpac Banking Co.,* 1996 WL 469660 at *7; *N.S.N. Int'l Industries, N.V. v. E.I. Du Pont De Nemours & Co.,* No. 89 Civ. 1692(KTD)(AJP), 1996 WL 154182 at *3 (S.D.N.Y. April 3, 1996). Thus reduced, the hourly rates range from $323 for the most senior partner to $106 for the person who appears to be the most junior associate, which I know are quite reasonable based on my own knowledge of hourly rates charged by law firms in our area and are within the range which courts in this district have held to be reasonable in awarding fees under Rule 37. *See, e.g., Chatin v. New York,* No. 96 Civ. 420(DLC), 1997 WL 304848 (S.D.N.Y. June 6, 1997) (finding hourly rates of $270, $235 and $200 to be reasonable for third-, second- and first-year associates, respectively); *Fund Comm'n Svc., II, Inc. v. Westpac Banking Co.,* 1996 WL 469660 at *7 (finding hourly rates of $323 and $119 to be reasonable for attorneys who, the court assumed, were a partner and an associate, respectively).

 With respect to the number of hours spent by plaintiff's attorneys, I agree with defendants that the charges relating to plaintiff's review of Hazardous Waste Manifests

appear not only somewhat excessive but also unrelated to the sanctions issue and have deleted $8,039 from the award herein, but I cannot agree that the time spent on certain other matters with which defendant finds fault, such as two letters to Mr. Sponseller, were *necessarily* excessive, since they apparently would have required work, in addition to that indicated with the documents to which they related preparatory to the writing of them.

I am, however, concerned in general about the amount of time claimed to have been spent by plaintiff's attorneys. I have reviewed the time records quite carefully.[7] I am loathe to question many items such as, for example, whether the initial work in bringing the motion to compel in 1995 should have taken 100 hours or 80 hours, given the unknown quantity of necessary background work and footwork that I, as a former practicing attorney, know goes into what finally becomes the papers filed in the court, and I believe counsel should be given latitude to do the amount of research counsel feels needed to be comfortable enough to produce her final product to the court or client. Yet, I see in the time listings submitted enough indications of what I do find to be excessive time that I cannot simply accept the entire record of time wholesale. Based on a comparison of my own records of certain conferences, hearings and written submissions of counsel with the time records submitted by plaintiff, I find that a reasonable number of hours to have been expended for the work would have been no more than 75% of that requested. Accordingly, I have reduced the total number of hours by 25%. *See Luciano v. Olsten Corp.*, 109 F.3d at 117; *In re Agent Orange Product Liability Litig.*, 818 F.2d 226, 237 (2d Cir.1987); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d at 1146 and cases cited therein (endors-

ing across-the-board percentage cuts as "practical means of trimming fat" from fee applications).[8] This reduction will also serve to discount adequately for time spent on matters unrelated to the conduct of defendant for which the sanctions were imposed, some of which I know to be necessarily intertwined with the work that was related thereto.

Upon a 15% reduction in hourly rates for each attorney for the reasons indicated earlier and upon a 25% reduction in the number of hours listed on plaintiff's counsel's records to arrive at a reasonable sum, the total which plaintiff is awarded from defendant is $84,950.70.[9]

SO ORDERED.

---

7. Indeed, I have noticed typographical errors and/or minor arithmetical mistakes. For example, it appears that Mr. Longman's fees for 1995–96 must have been $365 per hour, not $360, and that the charge for Ms. Speith's work on September 18, 1995 should be $1187, not $1877. I have adjusted the lodestar accordingly.

8. I have decided that, rather than list examples herein of all the specific instances I have analyzed, I will provide them to the parties in a less public form if they wish.

9. Insofar as it is still unclear whether defendant's required production was ever completed, I had intended to leave deposited with the court a portion of the $83,000 defendant has placed here. However, in light of plaintiff's recent motion for a voluntary dismissal of the complaint, that full amount will be released to satisfy the award made herein, and defendant shall remit to plaintiff the additional $1,950.70 within 10 days hereof.